NESTER et al., Appellants,

v.

LIMA MEMORIAL HOSPITAL et al., Appellees.

[Cite as *Nester v. Lima Mem. Hosp.* (2000), 139 Ohio App.3d 883.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–2000–27.

Decided Nov. 15, 2000.

884

*Palmer, Volkema & Thomas, Michael S. Miller, Robert G. Palmer* and *Elizabeth S. Burkett,* for appellants.

*Oxley, Malone, Fitzgerald & Hollister* and *Michael J. Malone,* for appellee, Lima Memorial Hospital.

*Robert M. Anspach & Associates* and *Mark Meeks,* for appellee, Todd J. Hixenbaugh, M.D.

*Elsass, Wallace, Evans, Schnelle & Co., L.P.A.,* and *Richard H. Wallace,* for appellee, Ohio Bureau of Workers' Compensation.

*Gooding, Huffman, Kelley & Becker* and *Lawrence S. Huffman,* for appellee, Patrick L. McCluskey, M.D.

HADLEY, Presiding Judge.

The plaintiffs-appellants, Deborah and Kenneth Nester ("appellants"), appeal the judgment of the Allen County Court of Common Pleas granting defendant-appellee Dr. Todd Hixenbaugh's motion to compel complete medical records. For the following reasons, we reverse the judgment of the trial court.

The pertinent facts and procedural history in this matter are as follows. In May 1998, appellant Deborah Nester filed a claim for medical negligence against Dr. Hixenbaugh, Lima Memorial Hospital, and Dr. Patrick L. McCluskey, alleging various physical and psychological damages. Appellant Kenneth Nester filed a loss-of-consortium claim against the same defendants. The case *sub judice* involves a dispute over the medical records of Deborah Nester.

The appellees requested the medical records of Deborah Nester from Dr. Herman, her current physician. In March 2000, they received only the records from 1990 to the present. The records pertaining to Deborah's treatment by Dr. Herman and/or her office prior to 1990 were withheld.[1] The appellants object to the disclosure of these records, claiming they are privileged and have no bearing on the issues at hand.

On April 5, 2000, Dr. Hixenbaugh filed a motion to compel disclosure of all the medical records held by Dr. Herman. On April 8, 2000, the trial court granted the motion and ordered the appellants to produce the "complete medical records and history held by Dr. Parmie Herman relative to all treatment from 1973 to present, to all defense counsel no later than May 5, 2000." It is from this judgment that the appellants now appeal, asserting one assignment of error.

Before addressing the merits of this matter, we must contend with the appellees' allegations that the order appealed from is not a final appealable order. R.C. 2505.02(B) provides that an order is final and may be reviewed when (1) it concerns a provisional remedy and (2) the appealing party would not be afforded a meaningful remedy on appeal after final judgment. The discovery of privileged matter is specifically defined as a provisional remedy in R.C. 2505.02(A)(3). Furthermore, once privileged information is disclosed there would be no way for it to be made private once again. Finding information to be privileged and not subject to an exception allowing for its disclosure after the fact clearly does not afford the appealing party a meaningful or effective remedy. Therefore, we find

---

1. From 1973 to 1990, Deborah Nester was treated by Dr. Freitag. Dr. Herman joined Dr. Freitag's office in 1990 and has treated Nester from 1990 to the present. As Dr. Herman and Dr. Freitag shared the same office, Dr. Herman has access to the appellant's medical records from 1973 to the present.

that the order of the trial court is indeed a final, appealable order and we will now address the appellants' sole assignment of error:

"The trial court erred in requiring the plaintiffs-appellants to produce medical records plaintiffs-appellants assert are privileged, *i.e.,* are not causally or historically related to the injuries claimed in the underlying action."

The appellants contend that the trial court erred in granting the appellees' motion to compel and ordering them to disclose Deborah's complete medical history to the appellees. The appellants argue that these records are privileged and do not all fall under an exception allowing for their disclosure. For the following reasons, we agree.

R.C. 2317.02 sets forth the rules and requirements pertaining to privileged communication. R.C. 2317.02 states:

"The following persons shall not testify in certain respects:

"* * *

"(B)(1) A physician or a dentist concerning a communication made to him by his patient in that relation or his advise to his patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

"The testimonial privilege under this division does not apply and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:

"(a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under any of the following circumstances:

"* * *

"(iii) If a medical claim * * * is filed by the patient * * *.

"* * *

"(3)(a) If the testimonial privilege described in division (B)(1) of this section does not apply as provided in division (B)(1)(a)(iii) of this section, a physician or dentist may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to him by the patient in question in that relation, or his advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the medical claim * * *." See 145 Ohio Laws, Part III, 5451, 5459.

The order that is the subject of this assignment provides:

"Defendant Todd J. Hixenbaugh's Motion to Compel is well taken. Plaintiff shall produce and deliver her complete medical records and history held by Dr. Parmie Herman relative to all treatment from 1973 to present, to all defense counsel no later than May 5, 2000."

■■■ The allegations that gave rise to this medical negligence case took place in May 1997. The appellants contend that medical records from 1973 are not causally related to an injury that she suffered twenty-four years later. We are persuaded that the trial court's order was too broad in that it allowed for the unbridled disclosure of privileged communications made between the patient and her physician. An *in camera* inspection by the trial court of the medical records at issue is necessary to determine which documents are discoverable by the appellee.[2] *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918; *Weierman v. Mardis* (1994), 101 Ohio App.3d 774, 656 N.E.2d 734. Only those deemed to be causally or historically related to physical or mental injuries that are relevant to the issues in the case are discoverable.

Having found error prejudicial to the appellants herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, J., concurs.

WALTERS, J., dissents.

WALTERS, Judge, dissenting.

I must respectfully dissent from the majority opinion because the order appealed from does not, in my view, fit within the statutory definition of "final," as to trigger the jurisdiction of this court. However, even if I were inclined to conclude that it is a final, appealable order, I would nonetheless dissent, since I also do not believe that the trial court abused its discretion by issuing the order to compel.

---

2. The trial court attempted to modify its previous order and directed the appellants to produce and deliver the records for an *in camera* inspection. However, the notice of appeal was filed May 5, 2000, and the trial court's modification was dated May 9, 2000. The filing of a notice of appeal deprives the trial court of jurisdiction to grant any relief that would deprive the appellate court of its jurisdiction to reverse, affirm, or modify the order from which the appeal was taken. *Howard v. Catholic Soc. Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 637 N.E.2d 890. Therefore, the trial court lacked jurisdiction to modify its previous order.

With respect to the issue of whether the order to compel Deborah Nester's medical records from 1973 to the present should be considered final and appealable, I begin my analysis with Section 3(B)(2), Article IV of the Ohio Constitution, which bestows upon the courts of appeals "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." A final order includes "[a]n order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4)(a) and (b).

A "provisional remedy" is defined as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence." R.C. 2505.02(A)(3).

I agree that the entry in this case falls squarely within the definition of a "provisional remedy." I also believe that, in accordance with R.C. 2505.02(B)(4)(a), the order determines the action with respect to the medical records in question and prevents the appellant from obtaining a judgment in her favor on this particular issue. In spite of this, I do not find that the requirement contained in R.C. 2505.02(B)(4)(b) has been satisfied, in that it is my belief that the appellant would have an effective or meaningful remedy of this issue on appeal after a final disposition.

"Whether a remedy is meaningful or effective essentially is determined by the impracticability and detrimental effect of a delayed review of such a 'provisional decision.'" Penko v. Eastlake (Dec. 11, 1998), Lake App. No. 98–L–186, unreported, at *3, 1998 WL 1145267. In Gibson–Myers & Assoc. v. Pearce (Oct. 27, 1999), Summit App. No. 19358, unreported, 1999 WL 980562, the Ninth District Court of Appeals stated:

"If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage."

I concur with the reasoning expressed by the Ninth District, since the very definition of a trade secret is, in part, information that derives independent economic value from being generally unknown and not readily ascertainable by

the public. See R.C. 1333.61(D). Once the information becomes available through the discovery process, a subsequent appeal, even if successful, cannot restore the valuable secretive nature. Thus, the complaining party may be forever precluded from realizing a benefit from the information.

In contrast, I am not persuaded that a similar detriment will occur from the trial court's order to compel the discovery in this case. Moreover, with the release of the holding announced today, I am concerned that the appellate courts will begin to construe R.C. 2505.02 to the point where *any* order compelling the discovery of allegedly privileged material will automatically be considered a final, appealable order. See, *e.g., Cuervo v. Snell* (Sept. 26, 2000), Franklin App. Nos. 99AP–1442, 99AP–1443 and 99AP–1458, unreported, 2000 WL 1376510, applying the reasoning of *Gibson–Myers & Assoc.* to an order compelling the production of documents allegedly covered by the attorney-client privilege. Such a liberal construction was obviously not the intent of the legislature, given the two-prong test set forth in R.C. 2505.02(B)(4). For these reasons, I do not agree that the order appealed from in this case should be considered final and appealable.

Notwithstanding, even if I were convinced that the order in this case is final, I would still not agree with the majority's reasoning that the court provided the "unbridled disclosure" of privileged communications, thus necessitating a remand to allow the court to conduct an *in camera* inspection to determine which medical records are discoverable. It is well established that the management of discovery lies within the broad discretion of the trial courts. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 89–90, 295 N.E.2d 659, 660–661. Thus, an appellate court reviews an issue of discovery pursuant to an abuse-of-discretion standard. An abuse of discretion is a decision that can be characterized as unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

There is no physician-patient privilege under Ohio common law. *Wargo v. Buck* (1997), 123 Ohio App.3d 110, 120, 703 N.E.2d 811, 817. "Because the privilege is entirely statutory and in derogation of the common law, it must be strictly construed against the party seeking to assert it." *Id.,* citing *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602, 606–607. The Ohio Revised Code generally provides that the physician-patient privilege is waived in the event that the patient files a medical claim. See R.C. 2317.02. In accordance with R.C. 2317.02(B)(3)(a), if the privilege is waived, the physician may be compelled to testify as to communications or advise "that related causally or historically to physical or mental injuries that are relevant to issues in the medical claim * * *." "The underlying rationale for this waiver is to prevent patients from filing personal injury actions and then using the privilege to avoid

responding to discovery requests." *Wargo*, 123 Ohio App.3d at 120, 703 N.E.2d at 819.

The appellant in this case has alleged a myriad of physical and mental ailments, which she claims all stem from the 1997 laparoscopic surgery. These problems include chronic pain, Adult Respiratory Distress Syndrome, depression, joint stiffness, backaches, numbness, and loss of sexual desire. This extensive range of allegations essentially places the appellant's entire medical history at issue. Therefore, I believe that the trial court did not abuse its discretion by ordering the discovery of all medical records from 1973 to the present. Furthermore, I cannot agree with the majority's decision to remand for an *in camera* inspection, since I fail to see how a trial judge is supposed to determine whether a previous medical problem is relevant to the underlying action when such a variety of disorders have been interjected into the lawsuit.

For these reasons, I would have either dismissed the appeal for lack of a final order, or affirmed the trial court's order to compel.