JOURNAL ENTRY and OPINION
{¶ 1} Barbara S. Gill appeals from an order of the domestic relations division of common pleas court, granting the guardian ad litem's motion to compel the execution of releases for medical records in an underlying custody dispute. On appeal, Gill complains that the trial court abused its discretion in compelling her to execute releases for her privileged medical/psychological records because she had revoked a prior authorization to release the privileged information. The guardian ad litem argues Gill waived her privilege when she filed a counterclaim in this case and that she had executed an earlier release of her records.
 {¶ 2} After a review of the record and applicable law, we have concluded that the court properly granted the guardian ad litem's motion compelling Gill to sign the releases. Accordingly, we find the court did not abuse its discretion and affirm the order of the trial court.
 {¶ 3} The record reveals that on June 10, 1998, Paul and Barbara Gill were married and one child, Allyson, was born on June 30, 1999. On June 26, 2001, Paul J. Gill filed a complaint for divorce and on July 13, 2001, Barbara filed her answer and counterclaimed for allocation of parental rights and responsibilities. On November 2, 2001, the court appointed Jeffrey Fanger to act as the guardian ad litem on behalf of Allyson.
 {¶ 4} In January of 2001 Barbara purportedly went into an inpatient treatment program for drug dependency. She claimed to have completed the inpatient treatment and had begun her outpatient treatment. On December 3, 2001, during an interview with Fanger, Barbara presented several letters from her medical providers attesting to her psychological health and the completion of drug treatment programs,[1]
and also presented signed releases for medical records and/or psychological information.
 {¶ 5} In January of 2002 Fanger then sent letters to both Drs. Akashi and Neuenschwander requesting the medical records upon which they based their professional opinions. When Dr. Neuenschwander failed to comply, Fanger called him and learned that he did not have any medical records because he had not treated Barbara and represented himself as her friend. Fanger later obtained a letter dated July 27, 2001, stating Barbara did not complete the program and had been discharged from her aftercare treatment due to "chronic non-compliance."
 {¶ 6} Fanger then made several attempts to obtain medical records from Dr. Akashi. On January 3, 2002, he sent a letter to Dr. Akashi along with a signed release requesting her records. He also called Dr. Akashi several times in January requesting records, but received no response. On February 1, 2002, he telephoned Dr. Akashi to again request the records. At that time, Dr. Akashi informed Fanger that she could not comply with the request because her computer system was down and she could not produce the records, but gave him assurances the documents would be produced by the end of the month.
 {¶ 7} In early March, Fanger again made several attempts via telephone and fax to acquire those records. Finally on April 18, 2002, Dr. Akashi telephoned Fanger and told him that he did not need to see the records and that he could rely solely on her opinions. She finally stated that she did not want to provide the records, but that she would comply with the terms of the authorization by April 26, 2002. Dr. Akashi never did produce the records, and on April 29, 2002, Fanger received a fax from Barbara stating she had rescinded her authorization to release her medical records.
 {¶ 8} Fanger then filed a motion to compel Barbara to sign the releases concerning her medical records. Barbara did not respond and the court granted the motion on June 4, 2002.
 {¶ 9} Barbara now appeals and presents three assignments of error for our consideration. The first states:
 {¶ 10} "The trial court erred and abused its discretion in compelling defendant appellant to execute releases for privileged Medical/Psychological Records when defendant revoked authorization for such release."
 {¶ 11} Barbara argues that the court erred in compelling her to provide signed releases. Fanger asserts that Barbara has waived any privilege and that her original authorizations control the release of her medical records.
 {¶ 12} In Ohio, the physician-patient privilege is governed by R.C. 2317.02(B), and as a general rule, a physician may not testify concerning a communication made by a patient. R.C. 2317.02(B)(1), concerning privileged communications, states, in pertinent part:
 {¶ 13} "* * *
 {¶ 14} "The testimonial privilege established under this division does not apply, and a physician or dentist may testify, or may be compelled to testify in any of the following circumstances:
 {¶ 15} "(a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under any of the following circumstances:
 {¶ 16} "* * *
 {¶ 17} "(iii) If a medical claim * * * [or] any other type of civil action * * * is filed by the patient * * *."
 {¶ 18} Under this statute, the filing of any civil action by a patient waives the physician-patient privilege as to any communication that relates causally or historically to the physical or mental injuries put at issue by such civil action. Whenever custody of children is in dispute, the party seeking custodial authority subjects him or herself to extensive investigation of all factors relevant to the permanent custody award. Of major importance, as stated in R.C. 3109.04(F)(1)(e), is the mental and physical health of not only the child but also the parents. R.C. 3109.04 places the mental conditions of all family members squarely in issue.
 {¶ 19} We have also held that a party seeking custody of a child in a divorce action makes his or her mental and physical condition an issue to be considered by the court in awarding custody and that the physician-patient privilege does not apply. Neftzer v. Neftzer (2000),140 Ohio App.3d 618.
 {¶ 20} Here, Barbara filed a counterclaim seeking custody, executed a release of all of her medical records, and introduced Dr. Akashi's expert report in furtherance of her claims.
 {¶ 21} Accordingly, her counterclaim seeking custody constituted a waiver of the physician-patient privilege. In addition, she waived her privilege by introducing the letters from her treating physicians. Under R.C. 2317.02(B), a patient may waive the privilege by voluntarily testifying as to a privileged matter, which may consist of admitting into evidence records containing privileged communications. See Long v.Isakov (1989), 58 Ohio App.3d 46. Accordingly, she has waived any privilege covering those records.
 {¶ 22} This assignment of error, therefore, is without merit and it is overruled.
 {¶ 23} The second assignment states:
 {¶ 24} "The trial court erred and abused its discretion in its application of the law by granting the guardian ad litem's motion to compel execution of releases."
 {¶ 25} Barbara contends the court abused its discretion in granting Fanger's motion to compel execution of releases. Fanger argues that the court did not abuse its discretion in granting his motion because Barbara filed a counterclaim in this custody fight and voluntarily and actively placed her medical and psychological health into evidence.
 {¶ 26} Generally, the trial court has broad discretion in controlling the discovery process. See, e.g., BFI Waste Systems of Ohiov. Garfield Hts. (1994), 94 Ohio App.3d 62. Civ.R. 37 provides a mechanism by which discovery rules can be enforced and specifically authorizes a trial court to make "just" orders in response to discovery violations. In particular, Civ.R. 37(A) authorizes and governs motions to compel discovery; Civ.R. 37(B) authorizes sanctions against a party who fails to obey an order to provide or permit discovery. In general, it is within the trial court's discretion to determine the particular sanction to be imposed for a discovery infraction, and a reviewing court will reverse such a ruling only for an abuse of that discretion. Nakoff v.Fairview General Hosp. (1996), 75 Ohio St.3d 254, syllabus. Abuse of discretion is more than an error of judgment; rather, it encompasses an attitude on the part of the trial court that is "unreasonable, unconscionable, or arbitrary." Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 27} Here, Barbara's medical records are discoverable because she has waived her privilege. Accordingly, the court did not abuse its discretion in granting the motion compelling her to execute the releases.
 {¶ 28} This assignment of error is overruled.
 {¶ 29} The third assignment states:
 {¶ 30} "The trial court erred and abused its discretion by failing to, at minimum, conduct an in camera review of appellant's psychological records to determine whether these records were relevant to issues in the divorce action."
 {¶ 31} Barbara argues the court erred in failing to conduct an in-camera inspection of her medical records. Fanger argues that she did not request a discovery hearing or an in camera inspection and, therefore, she waived any error in this regard.
 {¶ 32} We note that Barbara did not file a brief in opposition to the motion to compel. Likewise, she did not request an in camera inspection. Thus, she waived the issue of whether the trial court should have conducted such an inspection. See In re Estate of Haller (1996),116 Ohio App.3d 866. Barbara also did not argue, in the alternative, that some of the records were not causally or historically related to the claims at issue. Her failure in this regard prevents a finding from this court that the trial court erred in failing to grant the relief suggested. See Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,210.
 {¶ 33} Accordingly, we conclude the trial court did not abuse its discretion in failing to conduct an in camera inspection of these records. This assignment of error is not well taken and it is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and DIANE KARPINSKI, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Barbara gave Fanger a letter dated November 27, 2001 from Dr. Akashi stating that Barbara had completed her drug treatment program and a letter dated December 2, 2001 from Dr. James F. Neuenschwander II stating that in his professional opinion Barbara should remain in the Granville treatment center.