[Cite as *Harvey v. Cincinnati Ins. Co.*, 2017-Ohio-9226.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CAROLYN HARVEY, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 27470 |
| | : | |
| v. | : | Trial Court Case No. 15-CV-5655 |
| | : | 15-CV-5712 |
| THE CINCINNATI INSURANCE | : | |
| COMPANY, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of December, 2017.

. . . . . . . . . .

JEFFREY SNEAD, Atty. Reg. No. 0063416, 8997 Springboro Pike, Miamisburg, Ohio 45342
        Attorney for Plaintiff-Appellee Carolyn Harvey

PAUL RODERER, Atty. Reg. No. 0019707, 4 E. Schantz Avenue, Dayton, Ohio 45409
        Attorney for Plaintiff-Appellee Barbara Petersen

NICHOLAS SUBASHI, Atty. Reg. No. 0033953 and ANNE KEETON, Atty. Reg. 0076811, The Greene Towne Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
        Attorney for Defendant-Appellant Donald Hartman

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Defendant Donald Hartman appeals a discovery order requiring him to sign medical authorizations for release of medical records relating to his eyesight to counsel for one of the plaintiffs and allowing counsel to inquire further about his eyesight. We conclude that the release order is overbroad. And we conclude that there is not enough information in the record to decide whether allowing further inquiry about Hartman's eyesight is justified. Consequently we vacate the discovery order.

## I. Background

{¶ 2} In June 2014, around 7:40 p.m., Donald Hartman was driving south on Main Street, in downtown Dayton. He stopped for a red light at the mid-block crosswalk between First and Second Streets, near the Schuster Performing Arts Center. It was raining, and the wind was blowing. When the light turned green, Hartman entered the crosswalk. Suddenly, he saw two pedestrians on his left. Hartman hit the brakes, but it was too late. His car had hit Carolyn Harvey and Barbara Petersen. Each woman filed a personal-injury suit against Hartman, claiming negligence. The cases were later consolidated.

{¶ 3} Hartman was deposed by counsel for Harvey in September 2016. A couple of months before the deposition, Hartman had had eye surgery to remove cataracts. During the deposition, counsel asked Hartman about his eyesight and medical history. Hartman's attorney instructed him not to answer some of the questions. Later, at an in-chambers conference in February 2017, Harvey's counsel raised the issue of Hartman's eyesight and orally moved for an order requiring Hartman to sign authorizations allowing counsel to obtain his medical records related to his vision. The trial court sustained the motion and ordered Hartman to sign medical-release authorizations allowing Harvey's

counsel to acquire his medical records related to the diagnosis and treatment of his eyesight from July 18, 2013, to the present. The court also ordered that "if necessary, Plaintiff's counsel is allowed to inquire further regarding Defendant's eyesight after receipt of the subject records."

{¶ 4} Hartman appealed.

## II. Analysis

{¶ 5} The sole assignment of error alleges that the trial court erred by ordering Hartman to sign the medical-release authorizations and erred by permitting further inquiry into his eyesight.

{¶ 6} While as a general matter discovery orders are not final and appealable, a proceeding for "discovery of privileged matter" is a "provisional remedy," R.C. 2505.02(A)(3), the granting or denying of which is final and appealable if the order "in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy," R.C. 2505.02(B)(4), and "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment," *id.* An order requiring the release of privileged information in discovery determines the action with respect to a provisional remedy and, because the privileged information has already been released, prevents the appealing party from obtaining an effective remedy following final judgment. "In this situation, the proverbial bell cannot be unrung." *Randall v. Cantwell Mach. Co.*, 10th Dist. Franklin No. 12AP-786, 2013-Ohio-2744, ¶ 7. So to the extent that the discovery order here requires Hartman to grant a release of his medical records that is, or could lead to the production of privileged information, it is a final and appealable

order. *See id.* at ¶ 8 (concluding that an order granting the appellee's motion to compel the appellant to sign a medical release and denying a protective order constituted a final and appealable order).

{¶ 7} "Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard." (Citation omitted.) *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. But "if the discovery issue involves an alleged privilege, as in this case, it is a question of law that must be reviewed de novo." (Citation omitted.) *Ward* at ¶ 13.

{¶ 8} Civ.R. 26(B) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." "Medical records are generally privileged from disclosure under R.C. 2317.02(B)(1)," known as the physician-patient privilege. (Citation omitted.) *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 14. The statute states that a "physician, advanced practice registered nurse, or dentist" cannot "testify" about a "communication" made to one of those people. R.C. 2317.02(B)(1). The definition of "communication" includes medical records. R.C. 2317.02(B)(5)(a).

{¶ 9} The disputed discovery order here (Doc. 65, 15-CV-5712) states, in full:

On September 8, 2016, Plaintiff's Counsel took the deposition of Defendant Donald Hartman. During the deposition, Plaintiff's counsel certified three questions regarding Defendant Hartman's medical history as it pertains to his eyesight. Defendant's counsel instructed the witness not to answer those questions or any other questions regarding his medical history.

In chambers on February 3, 2017, Plaintiff's counsel made an oral motion for a ruling on the certified questions and further requested access to Defendant Hartman's medical records concerning his eyesight.

Upon due consideration and after arguments of counsel, the Court hereby **ORDERS** the following:

1) Defendant Hartman sign medical release authorizations allowing Plaintiff's counsel to acquire his medical records for diagnosis and treatment of his eyesight for the period encompassing July 18, 2013 to present.

2) If necessary, Plaintiff's counsel is allowed to inquire further regarding Defendant's eyesight after receipt of the subject records.

{¶ 10} We conclude that the release order is overbroad. The medical-release authorization referred to in the order is not in the record. But it seems likely that at least some of the medical records covered by the order are protected under R.C. 2317.02. For example, if an ophthalmologist performed Hartman's cataract surgery, the ophthalmologist's records are protected, because an ophthalmologist is a "physician." But it does not appear that the records of a separate optometrist or optician are protected.[1] The statute expressly states that the physician-patient privilege applies only to "doctors of medicine, doctors of osteopathic medicine, doctors of podiatry, advanced practice registered nurses, and dentists." R.C. 2317.02(B)(6). *See State v. Whitaker*, 3d Dist.

---

[1] The privilege accorded to a physician's records would likely extend to the records generated by the care providers who are employees or contractors of the physician's office.

Auglaize No. 2-79-16, 1980 WL 351960, *7 (May 8, 1980) (concluding that the physician-patient privilege statute in effect at that time did not apply to optometrists).

{¶ 11} As to the order allowing further questioning about Hartman's eyesight, the Ohio Supreme Court held in *Ward v. Summa Health System* that "R.C. 2317.02(B) does not protect a person from having to disclose his or her own medical information when that information is relevant to the subject matter involved in a pending civil action." *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, at ¶ 27. "[N]othing in the statute," said the Court, "gives a *patient* the right to refuse to testify about his or her own medical information." (Emphasis sic.) *Id.* at ¶ 26. Here, the record before us does not allow proper review of the order allowing Plaintiffs to question Hartman about his eyesight. Neither Hartman's deposition nor a transcript from the in-chambers conference is in the record. Copies of the deposition attached to a brief are not properly before us and we know not whether it was presented to, or considered by, the trial court. Nor can we discern the trial court's rationale for its discovery-order decisions. Consequently, we cannot tell what information about Hartman's eyesight the plaintiffs seek or whether it is protected communications from, or records of, a provider to whom the privilege applies.

{¶ 12} The sole assignment of error is sustained.

### III. Conclusion

{¶ 13} The trial court's order is vacated, and this case is remanded for further proceedings. On remand, the trial court may compel Hartman to authorize the release only of non-privileged information or records. And if the court permits further questioning about Hartman's eyesight, it should be limited so that it does not allow inquiry into communications from, or records of, a provider to whom the privilege applies.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Jeffrey Snead
Paul Roderer
Nicholas Subashi
Anne Keeton
Lance Oliver
Brian McHenry
Hon. Timothy N. O'Connell