[Cite as *Karimian-Dominique v. Good Samaritan Hosp.*, 2019-Ohio-2750.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| RHONDA J. KARIMIAN-DOMINIQUE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28256 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-3623 |
| | : | |
| GOOD SAMARITAN HOSPITAL, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of July, 2019.

. . . . . . . . . . .

DWIGHT D. BRANNON, Atty. Reg. No. 0021657, MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, and ROBERT W. GURRY, Atty. Reg. No. 0079481, 130 W. Second Street, Suite 900, Dayton, Ohio 45402

And

MICHAEL L. WRIGHT, Atty. Reg. No. 0067698, 130 W. Second Street, Suite 1600, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellant

JOHN F. HAVILAND, Atty. Reg. No. 0029599 and ELIZABETH WILFONG, Atty. Reg. No. 0088172, 6 N. Main Street, Suite 400, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee, Good Samaritan Hospital

SUSAN BLASIK-MILLER, Atty. Reg. No. 0005248 and KEVIN C. QUINLAN, Atty. Reg. No. 0092999, One S. Main Street, Suite 1800, Dayton, Ohio 45402
        Attorneys for Defendant-Appellee, Latit Goyal, M.D.

THEODORE M. MUNSELL, Atty. Reg. No. 0022055 and KAREN M. CADIEUX, Atty. Reg. No. 0079240, 280 N. High Street, Suite 1300, Columbus, Ohio 43215

Attorneys for Defendants-Appellees, Premier Heart Associates, Abdul Wase, M.D., and Ahmad Abdul-Karim, M.D.

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Rhonda Karimian-Dominique appeals from an order of the Montgomery County Court of Common Pleas, which granted the motion of Dr. Latit Goyal to compel her to execute medical authorizations and denied her motions for a protective order and for an in camera review of her deceased husband's psychotherapy notes. For the following reasons, the trial court's order will be affirmed.

## I. Factual and Procedural History

{¶ 2} According to the amended complaint, on February 21, 2015, Michael Dominique presented to the emergency room of Good Samaritan Hospital complaining of chest pain and shortness of breath. Although pulmonary embolism was a differential diagnosis, Dominique was not evaluated for that condition. Dominique underwent a cardiac catheterization on February 23. On February 24, 2015, Dominique suffered a massive pulmonary embolism and died.

{¶ 3} On July 18, 2016, Karimian-Dominique, as Dominique's surviving spouse and as administrator of Dominique's estate, filed this action, asserting seven claims: (1) medical negligence, (2) wrongful death, (3) survivorship, (4) loss of consortium, (5) negligent/intentional infliction of emotional distress, (6) declaratory relief as to Anthem Blue Cross Blue Shield, and (7) disgorgement/unjust enrichment. The amended complaint named Good Samaritan Hospital, Dr. Abdul Wase, Dr. Ahmad Abdul-Karim,

Premier Heart Associates, Dr. Latit Goyal, Emergency Professional Services,[1] Anthem Blue Cross and Blue Shield, and other John/Jane Does as defendants (collectively "Defendants").

{¶ 4} Upon Defendants' motion, the trial court granted summary judgment to Defendants on Karimian-Dominique's claims for infliction of emotional distress, declaratory relief, and disgorgement/unjust enrichment (Counts Five, Six, and Seven), and it limited her loss of consortium claim to the period between February 21 and February 24, 2017.

{¶ 5} On October 23, 2018, Dr. Goyal moved to compel Karimian-Dominique to execute and deliver authorizations to disclose health information regarding Dominique, which her counsel had previously provided but later rescinded. Dr. Goyal's motion stated that the basis for the rescission of all authorizations for the release of medical information was not a claim of privilege, but due to issues that arose at a recent trial in another case involving Karimian-Dominique's counsel where the law firm now representing Dr. Goyal was defense counsel. Dr. Goyal attached to his motion correspondence from Karimian-Dominque's counsel to his defense counsel in this case, in which Karimian-Dominique's counsel alleged that the law firm had "trashed" the plaintiff in the prior case "as a sporting event." (Ex. E.) Dr. Goyal's motion sought to compel Karimian-Dominique to provide authorizations for records from the office of Antoinette Cordell & Associates and from Dr. Craig Olson, Psy.D. The records allegedly involved Dominique's treatment for individual

---

[1] The amended complaint referred to this defendant as Team Health – Department of Emergency Medicine. Karimian-Dominique subsequently moved to substitute Emergency Professional Services as the correctly-named defendant. The trial court granted that motion on February 21, 2017.

and marital counseling. Dr. Goyal argued that disclosure of those records was required by Civ.R. 26, Civ.R. 37, and R.C. 2317.02(B).

{¶ 6} Karimian-Dominique opposed Dr. Goyal's motion and filed a motion for a protective order, seeking to prevent discovery of Dominique's psychotherapy records. Karimian-Dominique claimed that the psychotherapy notes of Dr. Olson (and Dr. Brian Wood, Dominique's prior psychologist) were subject to doctor-patient privilege, and that the privilege had not been waived by the filing of the lawsuit, because Dominique was deceased and his emotional condition was not a genuine issue in the case. Karimian-Dominique separately moved for an in-camera review of Dominique's psychotherapy notes "to determine the relevance of the materials and the applicability of the doctor-patient privilege, and whether that privilege is subject to waiver."

{¶ 7} Good Samaritan Hospital filed a memorandum in support of Dr. Goyal's motion and in opposition to Karimian-Dominique's motions.

{¶ 8} On December 28, 2018, the trial court granted the motion to compel and denied the motions for a protective order and for an in-camera review. The court reasoned:

> Having fully considered the parties' arguments, the case law, and R.C. 2317.02, the court concludes that the psychotherapy/mental health records are not privileged. The records of that genre of treatment causally or historically relate to the wrongful death and associated damages claimed by Plaintiff. Hence, it would be inappropriate and unnecessary to issue a protective order barring the production of the records. Further, the court finds that in-camera review is unnecessary, as a screening for privilege is

unneeded, because R.C. 2317.02 renders the records non-privileged as a whole.

{¶ 9} Karimian-Dominique appeals from the trial court's ruling.

## II. Review of Trial Court's Order

{¶ 10} In her sole assignment of error, Karimian-Dominique claims that the trial court erred in granting the motion to compel and denying her motions for a protective order and for an in-camera review. She asserts that Dominique's psychotherapy records are privileged, and that the privilege has not been waived by filing her lawsuit. She argues that privilege is preserved for medical records that are unrelated to the issues raised in the litigation, and she contends that Dominique's mental health records are not "causally or historically" related to the physical or mental injuries involved in this case. Karimian-Dominique argues that the trial court should have held a hearing on whether the records were privileged, that the records were not discoverable due to the purpose for which they were sought, and that the court should have conducted an in-camera review before ordering disclosure.

{¶ 11} Pursuant to Civ.R. 26(B)(1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Civ.R. 26(B)(1).

{¶ 12} "Medical records are generally privileged from disclosure under R.C. 2317.02(B)(1)." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 14. R.C. 2317.02(B)(1)(a)(iii) further provides, however, that a

"physician, advanced practice registered nurse, or dentist" may testify or be compelled to testify about communications by a patient if, among other circumstances, an action for wrongful death has been filed by the personal representative of the estate of the patient. The extent of the disclosure permitted under R.C. 2317.02(B)(1)(a)(iii) is limited by R.C. 2317.02(B)(3)(a), which provides:

> If the testimonial privilege described in division (B)(1) of this section does not apply as provided in division (B)(1)(a)(iii) of this section, a physician, advanced practice registered nurse, or dentist may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to the physician, advanced practice registered nurse, or dentist by the patient in question in that relation, or the advice of the physician, advanced practice registered nurse, or dentist given to the patient in question, *that related causally or historically to physical or mental injuries that are relevant to issues in the * * * action for wrongful death * * *.*

(Emphasis added.)   R.C. 2317.02(B)(3)(a).

{¶ 13} "Accordingly, the pursuit of a civil action wherein physical or mental injuries are causally or historically related to the issues that arise in that case is effectively treated as a waiver of privilege with regard to those conditions." *Montei v. Montei*, 2d Dist. Clark No. 2016 CA 12, 2016-Ohio-8190, ¶ 10.   Conversely, a party does not waive the privilege for records that are not causally or historically related to the claim.   *Pietrangelo v. Hudson*, 8th Dist. Cuyahoga No. 107344, 2019-Ohio-1988, ¶ 14.   "[T]he party asserting the privilege bears the burden of showing that the records sought are not causally or historically related to the claims."   *Id.* at ¶ 18; *see also Marcum v. Miami Valley Hosp.*,

2015-Ohio-1582, 32 N.E.3d 974, ¶ 22 (2d Dist.).

{¶ 14} The physician-patient privilege under R.C. 2317.02 has been extended to confidential relations and communications between a licensed psychologist and client. *See* R.C. 4732.19. Therefore, the pivotal question is whether Karimian-Dominique waived the privilege regarding the psychological records by filing her action for medical malpractice/wrongful death and related claims.

{¶ 15} When a discovery dispute involves privilege, we are presented with a mixed question of law and fact. *E.g.*, *Marcum* at ¶ 11; *Higbee v. Higbee*, 2d Dist. Clark No. 2013-CA-81, 2014-Ohio-954, ¶ 11; *Bogart v. Blakely*, 2d Dist. Miami No. 2010-CA-13, 2010-Ohio-4526, ¶ 24. Whether the privilege statute applies is a question of law, which we review de novo. *Id.* The parties do not dispute that Dominque's psychotherapy records are privileged, and that by filing suit, Karimian-Dominique has waived the privilege as to information that is historically or causally related to the issues raised in the litigation.

{¶ 16} However, whether specific medical records are "related causally or historically to physical or mental injuries that are relevant to the issues" in Karimian-Dominique's action is a factual issue, which we review under an abuse of discretion standard. *E.g., Bogart* at ¶ 24; *Marcum* at ¶ 11. An abuse of discretion occurs when the decision of a court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} As stated above, Karimian-Dominique brought claims of medical negligence, wrongful death, survivorship, and loss of consortium. "In Ohio, it is well established that a wife has a cause of action for damages for loss of consortium against

a person who, either intentionally or negligently, injures her husband and thereby deprives her of the love, care and companionship of her husband. * * * 'Consortium' consists of society, services, sexual relations and conjugal affection, which includes companionship, comfort, love and solace." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 91, 585 N.E.2d 384 (1992), citing *Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St.2d 65, 74, 258 N.E.2d 230, 235 (1970). By asserting a claim for loss of consortium in both the survivorship and wrongful death claims, Karimian-Dominique placed her relationship with her husband directly at issue in this litigation. Accordingly, a request for Dominique's psychological records related to marital counseling falls within the waiver of privilege under R.C. 2317.02.

{¶ 18} The privilege related to Dominique's individual counseling records presents a different factual question, given the broad range of topics that may be included in individual mental health counseling. Nevertheless, the privilege related to Dominique's individual counseling is also waived to the extent that Dominique's counseling records may contain communications related to his marital relationship (loss of consortium claim) or to matters affecting an evaluation of damages resulting from his hospitalization and death.

{¶ 19} With the record before us, we cannot conclude that the trial court erred in ordering that Karimian-Dominique sign releases for all of Dominique's records. The psychotherapy records were "within the ambit" of Karimian-Dominique's claims, *see Higbee* at ¶ 13, and we lack specific information that would identify specific records as not causally or historically related to the issues raised in the litigation.

{¶ 20} We emphasize that the burden is on the party asserting the privilege to

establish that certain records are privileged. As we stated in *Marcum*, 2015-Ohio-1582, 32 N.E.3d 974:

> We have been sensitive to the burden placed on trial courts to examine documents in camera to determine relevancy, when medical records can be voluminous and contain technical and scientific terminology not within the trial court's expertise. *Bogart*[, 2d Dist. Miami No. 2010-CA-13, 2010-Ohio-4526,] at ¶ 70. Although each case presents a different situation, the trial court does have the discretion to order full disclosure when it can be determined, based on the pleadings, that the records are relevant to the issues in the case. When appropriate, the trial court has the discretion to establish a procedure that will allow the court to review sufficient evidentiary support to enable the court to make a factual finding that the records are "causally or historically relevant," so that the privilege waiver applies. This may or may not require the trial court's in camera review.

> Some courts have recognized the procedure followed in this case, which included review of the records by plaintiff's counsel and the preparation of a privilege log, may be sufficient to develop a factual record of the type and nature of the records claimed to be privileged. *Csonka-Cherney [v. ArcelorMittal Cleveland, Inc.*, 2014-Ohio-836, 9 N.E.3d 515, ¶ 20 (8th Dist.)]; *see also Hartzell v. Breneman*, 7th Dist. Mahoning No. 10-MA-67, 2011-Ohio-2472. However, the burden lies on the party seeking to protect the records from disclosure to present sufficient evidence to support

that party's claim that the records are not causally or historically related to the claims in the case. *Pinnix v. Marc Glassman, Inc.,* 8th Dist. Cuyahoga Nos. 97998, 97999, 2012-Ohio-3263. We agree with the Eighth District when it stated, "[w]e recognize that the discovery process should be kept as simple as possible and that a trial court does not need to conduct an in camera review in every instance that a privilege is asserted. Moreover, the party claiming the privilege has the burden to show that the records are not causally or historically related. Thus, an in camera inspection is not necessary when there is no 'factual basis' justifying the trial court's in camera review." *Id.* at ¶ 11.

*Marcum* at ¶ 21-22.

**{¶ 21}** Karimian-Dominique's motion for a protective order sought to preclude *all* of Dominique's psychotherapy records from disclosure, and her motion for an in camera review asked the trial court to review all of the records of Dr. Olson[2] to determine the records' relevance and the applicability of privilege. Karimian-Dominique did not provide any information about the content of the psychotherapy records, other than that they involved individual and marital counseling; she did not argue that certain counseling records were privileged, while others were not.

**{¶ 22}** On this record, the psychotherapy records, generally, were related to claims and issues in this case. Karimian-Dominique did not create a sufficient factual record of the type and nature of the records claimed to be privileged to warrant an in camera review

---

[2] The motion for in camera review did not specifically ask for an in camera review of the records of Dr. Wood or Antoinette Cordell and Associates.

to determine if specific records should retain physician-patient privilege as not historically or causally related to the claims. Accordingly, the trial court did not abuse its discretion in ordering the disclosure of Dominique's psychotherapy records and denying Karimian-Dominique's motions for a protective order and an in camera review.

{¶ 23} Karimian-Dominique's assignment of error is overruled.

{¶ 24} We have commented that "discovery is an issue separate from the question of whether evidence may be admissible at trial or even if it can be disclosed outside the litigation. Those are matters properly reserved to the sound discretion of the trial court on appropriate motion which is not before us at this juncture." *Higbee* at ¶ 13; *Marcum* at ¶ 23. Pending that, we note that the record does not contain a protective order addressing the privacy and confidentiality of Dominique's medical, including psychotherapy, records.

> Whenever any medical records are disclosed, it is the duty of the court to assure that the privacy and confidentiality of those records be carefully maintained until their admissibility is later determined at trial. When disclosure is ordered, it is appropriate for the parties to prepare and submit an agreed protective order outlining in detail how the records will be handled throughout the litigation process, who will have access, how access will be documented, how confidentiality will be maintained, and when the records will be returned or destroyed. "Trial courts may use protective orders to prevent confidential information, such as that contained in the medical records at issue, from being unnecessarily revealed." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 23.

An agreed protective order will also support the purpose of the privilege statute, "to create an atmosphere of confidentiality." *Wargo v. Buck*, 123 Ohio App.3d 110, 120, 703 N.E.2d 811 (7th Dist.1997). An appropriate agreed protective order in which the parties have agreed to treat the records as confidential should eliminate the need for an in camera inspection. *Langenfeld v. Armstrong World Industries, Inc.*, 299 F.R.D. 547, 555 (S.D.Ohio 2014). The appropriate order will depend on the particular facts of each case.

*Marcum* at ¶ 24. The trial court and the parties may wish to address this concern.

### III. Conclusion

**{¶ 25}** The trial court's judgment will be affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies sent to:

Dwight D. Brannon
Matthew C. Schultz
Robert W. Gurry
Michael L. Wright
John F. Haviland
Elizabeth Wilfong
Susan Blasik-Miller
Kevin C. Quinlan
Theodore M. Munsell
Karen M. Cadieux
Timothy Ita
Matthew Nakon
Philip Truax
Malorie Alverson
Hon. Mary L. Wiseman